IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NELSON ALEXANDER MALDONADO )
    MERLOS, )
ROBERTO CARLOS ORTEZ CONTRERAS, )
JORGE ADALID MONTOYA ESTRADA, )
                              )     1:25-cv-1645 (LMB/WEF)
        Petitioners, )
                              )
    v. )
                              )

KRISTI NOEM et al.,

        Respondents.

ORDER

Petitioners Nelson Alexander Maldonado Merlos ("Maldonado"), Roberto Carlos Ortez

Contreras ("Ortez"), and Jorge Adalid Montoya Estrada ("Montoya") (collectively "petitioners")

have filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241,

in which they assert that they have been illegally detained by the U.S. Department of Homeland

Security's ("DHS") Immigration and Customs Enforcement ("ICE"). Maldonado, an alleged

native and citizen of El Salvador, has been detained by ICE since August 28, 2025. Ortez, an

alleged native and citizen of El Salvador, has been detained by ICE since August 26, 2025.

Montoya, an alleged native and citizen of Honduras, has been detained by ICE since July 5,

2025. Specifically, they allege that their characterization by DHS as "applicant[s] for admission"

pursuant to 8 U.S.C. § 1225(a), thus subjecting them to mandatory detention under 8 U.S.C.

§ 1225(b)(2), violates their substantive due process rights (Count I); the Immigration and

Nationality Act ("INA") (Count II); and their procedural due process rights (Count III).

Petitioners are currently detained at the Farmville Detention Center, which is within this

Court's jurisdiction and the basis upon which they are suing Jeff Crawford, the Warden of the

Farmville Detention Center. Petitioners have also sued Kristi Noem, the DHS Secretary; Pamela Bondi, the Attorney General; and Russel Holt, ICE Washington Field Office's Enforcement and Removal Operations Director (collectively "the federal respondents"). For the reasons discussed in this Order, the Court finds that petitioners are detained pursuant to 8 U.S.C. § 1226(a). Accordingly, the Petition will be granted as to Count I, and the respondents will be ordered to release them from custody and provide them with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).[1]

## I.

## A.

Maldonado has resided in the United States for over eleven years and has lived at the same address in Maryland for 10 years. [Dkt. No. 1] at ¶ 24. See also [Dkt. No. 7] at ¶ 1. He is married to a U.S. citizen, who filed a family immigration petition (Form I-130), which was approved on June 10, 2022, [Dkt. No. 7] at 1, Ex. C., and has two young children who are also U.S. citizens. [Dkt. No. 1] at ¶ 24. His criminal history is exclusively related to two minor traffic incidents, [Dkt. No. 7] at 1, Ex. D, and he has "no criminal convictions," [Dkt. No. 1] at ¶ 24.

On August 28, 2025, Maldonado was allegedly encountered and arrested by ICE following a traffic stop in Washington, D.C. for "Failure to Maintain Lane." Id. at ¶ 25. Maldonado was a passenger in the car at the time of the stop. Id. Maldonado was subsequently detained and placed into immigration custody at the Farmville Detention Center. ICE issued a custody determination to continue his detention "without an opportunity to post bond or be released on other conditions." Id. at ¶ 26-27. Maldonado has since sought a custody

---

[1] Because the Court is granting relief on due process grounds, it need not address petitioners' arguments based on the INA or procedural due process.

2

redetermination before an immigration judge. Id. at ¶ 28. On September 15, 2025, Maldonado was issued a Notice to Appear ("NTA"),[2] which charged him with being inadmissible to the United States—and therefore subject to removal—pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). Id. at ¶ 29, Ex. B. Maldonado alleges that there is no indication that the NTA was properly served. Id. at ¶ 30. On September 15, 2015, at a rescheduled custody redetermination hearing, the Immigration Judge held that she did not have jurisdiction to grant Maldonado bond, relying on Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). Id. at ¶ 31. As a result, Maldonado remains in detention. Id. at ¶ 32.

B.

Ortez has resided in the United States for about 26 years, and lives in Washington D.C. with his partner and their two U.S. citizen children. Id. at ¶ 40. He has lived at the same home address for the past eight years. His only criminal conviction was for a minor speeding charge in 2019 for which he paid a fine. [Dkt. No. 8] at 1, Ex. C. Ortez has attended a Jehovah's Witness Church since 2009 and is an active member of his church community, serving as a publisher who formally participates in public ministry and speaks to his community about his faith. [Dkt. No. 1] at ¶ 40. Ortez also maintains the church's air conditioners through a company he established in 2024, and for which he has a business license in Washington, D.C.. Id. See also [Dkt. No. 8] at Ex. E.

On August 26, 2025, Ortez was arrested and was subsequently detained and placed into immigration custody at Farmville Detention Center. Id. at ¶ 41. Ortez requested bond from the immigration court, but the Immigration Judge held that he did not have jurisdiction to grant him

---

[2] A Notice to Appear is a "[c]harging document" that "initiates a proceeding before an Immigration Judge." 8 C.F.R. § 1003.13.

3

bond, relying on <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216. <u>Id.</u> at ¶ 43. As a result, Ortez remains in detention. <u>Id.</u> at ¶ 44.

C.

Montoya has resided in the United States for about 24 years, and lives in Virginia with his wife and two U.S. citizen children. <u>Id.</u> at ¶ 33. Montoya has been an active member of his church, Iglesia Pentocostal Rios de Agua Viva in Roanoke, Virginia, since 2001. <u>Id.</u> at ¶ 33. His criminal history is limited to two convictions for driving without a license and for failure to have his vehicle inspected in 2014 and 2016, respectively, for which he paid a fine. [Dkt. No. 9] at 1, Ex. C.

On July 5, 2025, Montoya was fishing in the James River near Roanoke Virginia, where he often fished. [Dkt. No. 1] at ¶ 34. After the sound of gunshots in the area prompted the police to arrive, he was given a ticket for a fishing violation, despite having a fishing license. <u>Id.</u> He was subsequently detained and placed into immigration custody at the Farmville Detention Center. <u>Id.</u> Between July 10, 2025 and September 2, 2025, Montoya submitted applications for relief or protection from removal, which remain pending. <u>Id.</u> at ¶ 36. On September 5, 2025, he filed a motion for bond with the Annandale Immigration Court. <u>Id.</u> at ¶ 37. On September 10, 2025, at a custody redetermination hearing, the Immigration Judge held that he did not have jurisdiction to grant Montoya bond, relying on <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216. <u>Id.</u> at ¶ 38. As a result, Montoya remains in detention. <u>Id.</u> at ¶ 39.

D.

Petitioners filed their Petition for Writ of Habeas Corpus on September 30, 2025. [Dkt. No. 1]. This Court subsequently entered an Order requiring that petitioners not "be removed or transferred from this district for any reason without this Court's permission." [Dkt. No. 2].

4

On October 7, 2025, petitioners filed their Proposed Release Plans. Maldonado's Proposed Release Plan explains that if released, he will reside with his spouse and children in Annapolis, Maryland, "where he has resided since May of 2015." [Dkt. No. 7] at 1. Maldonado's Proposed Release Plan also indicates that his spouse will transport him to and from any future removal hearings. Id. at 2. Ortez's Proposed Release Plan explains that if released, he will reside with his partner and their two children in Washington D.C., where he has resided since 2017. [Dkt. No. 8] at 1. Ortez's Proposed Release Plan also indicates that his family is in communication with members of his church to seek a U.S. citizen sponsor, if required, and that at least one individual has expressed interest. Id. Ortez's partner has also indicated that she will transport him to and from any future removal hearings. Id. at 2. Montoya's Proposed Release Plan explains that if released, Montoya will reside at his fixed address in Hollins, Virginia, where he has resided since August 2023, with his wife and two U.S. citizen daughters. [Dkt. No. 9] at 1. Montoya also asserts that his family is in communication with members of his church to seek sponsorship from a U.S. citizen, if required, and that he will be accompanied to future removal hearings by his immigration lawyer. Id. at 1-2.

On October 7, 2025, the federal respondents filed an opposition.  [Dkt. No. 8].  Finding that oral argument will not aid in the decisional process, the Petition will be resolved on the papers submitted.

## II.

The central question posed in this Petition is whether petitioners are subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond

5

hearing under § 1226(a).[3]  The federal respondents contend that petitioners' detentions are governed by § 1225(b)(2).  They maintain that whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained after a lawful admission into the U.S. and those who are present without a lawful admission." [Dkt. No. 6] at 8.  According to the federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a)'s discretionary detention provisions apply only to those who have been given legal status and subsequently placed into removal proceedings.  Id.  Therefore, they argue that because petitioners have not been admitted "as a legal matter" into the United States, they are inadmissible under 8 U.S.C. § 1182(a), considered to be applicants for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2).  Id. at 13.

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as several district courts throughout the country have found,[4] is contrary to

---

[3] The federal respondents argue that 8 U.S.C. §§ 1252(b)(9) and 1252(g) divest this court of jurisdiction to review the legality of petitioners' detention. [Dkt. No. 6] at 6–7.  These jurisdictional arguments are the exact arguments this Court rejected in Hasan v. Crawford, 2025 WL 2682255, at *3–4 (E.D. Va. Sept. 19, 2025).  For all of the reasons stated in Hasan, this Court finds that it possesses jurisdiction to entertain this Petition to the extent petitioners challenge the constitutionality of their detentions.

[4] See, e.g., Gomes v. Hyde, 2025 WL 1869299 (D. Mass. July 7, 2025); Martinez v. Hyde, 2025 WL 2084238 (D. Mass. July 24, 2025); Lopez Benitez v. Francis, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Maldonado v. Olson, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Arrazola-Gonzalez v. Noem, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); J.O.E. v. Bondi, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); Jacinto v. Trump, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); Samb v. Joyce, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); Dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Garcia Jimenez v. Kramer, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); Anicasio v. Kramer, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); Rosado v. Figueroa, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); Orellana Juarez v. Moniz, 2025 WL 1698600 (D. Mass. June 11, 2025); Hernandez Nieves v. Kaiser, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); Vasquez Garcia v. Noem, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Carmona-Lorenzo v. Trump, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); Lopez-Campos v. Raycroft, 2025

DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025). This Court has previously addressed several of these points in Hasan v. Crawford, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025), and maintains and incorporates that reasoning into this Order.

Because each petitioner has been present in the United States for over ten years, and because § 1226(a) sets forth "the default rule" for detaining and removing aliens "already present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), petitioners' detentions are governed by § 1226(a). And under § 1226(a) and its implementing regulations, they are entitled to a bond hearing before an Immigration Judge who must determine whether each petitioner poses a danger to the community, or presents a flight risk. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless and until the Immigration Judge makes such a determination, petitioners' continued detentions would be unlawful.

III.

For all the reasons stated above, the petitioners' Petition [Dkt. No. 1] is GRANTED, and it is hereby

---

WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

ORDERED that petitioners be released from custody, with all their personal property, pending their bond hearings before the Immigration Judge.  Petitioners must live at the fixed address identified in their Proposed Release Plans and appear at the bond hearing once the government notifies them of their dates, times, and locations; and it is further

ORDERED that respondents provide petitioners with a standard bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order; and it is further

ORDERED that respondents are ENJOINED from denying bond to petitioners on the basis that they are detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

ORDERED that respondents file a status report with this Court within 3 days of the bond hearing, stating whether petitioners have been granted bond, and, if their requests for bond were denied, the reasons for that denial.

The Clerk is directed to enter judgment in petitioners' favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, cancel the hearing scheduled for October 10, 2025, and close this civil action.

Entered this 9th day of October, 2025.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

8